**Case Nos. 23-299, 23-302**

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

---

IN RE: MARRIOTT INTERNATIONAL, INC., CUSTOMER DATA
SECURITY BREACH LITIGATION

---

On Petition for Permission to Appeal from the United States District
Court for the District of Maryland, MDL No. 19-md-2879 (Bailey, J.)

---

## RESPONDENTS' OMNIBUS OPPOSITION TO MARRIOTT AND
## ACCENTURE'S PETITIONS FOR PERMISSION TO APPEAL
## UNDER RULE 23(f)

---

Amy Keller
**DICELLO LEVITT LLP**
Ten North Dearborn Street
  Sixth Floor
Chicago, Illinois 60602
312.214.7900

James J. Pizzirusso
**HAUSFELD LLP**
888 16th Street, NW
  Suite 300
Washington, D.C. 20006
202.540.7200

Andrew N. Friedman
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Avenue, NW,
  Suite 500
Washington, D.C. 20005
202.408.4600

*Plaintiffs' Co-Lead Counsel*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1 and Local Rule 26.1,

Respondents make the following disclosure:

- Respondents are all natural persons.

- The publicly held corporations or entities that have a direct financial interest in this litigation are identified in Petitioners' disclosures:

  > "Petitioner Marriott International, Inc. certifies that Marriott International, Inc. (NASDAQ: MAR) is a publicly owned company and that no public corporation or entity owns 10% or more of Marriott International, Inc.'s stock."

(Case 23-299, Marriott Pet. at i).

  > "Accenture LLP certifies that it is not a publicly held corporation and no publicly held corporation owns more than ten percent of its stock. Accenture LLP is a wholly owned subsidiary of Accenture plc, a publicly traded corporation. Accenture is not aware of any publicly held corporation that owns more than ten percent of Accenture plc stock."

(Case 23-302, Accenture Pet. at C-1).

- This case does not arise out of a bankruptcy proceeding.

- This is not a criminal case in which there was an organizational victim.

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................... 1

RELEVANT FACTUAL AND PROCEDURAL BACKGROUND............ 3

    A.    Marriott sought to address all claims against it in a single court, renouncing the two-sentence Venue Clause at the outset of litigation. ........................................... 5

    B.    Judge Grimm largely granted class certification in May 2022................................................................................ 7

    C.    This Court granted leave to appeal under 23(f), ultimately reversing, instructing the District Court to consider the Venue Clause. .................................................... 8

    D.    Judge Bailey rejected Marriott's arguments about the Venue Clause, reinstated Judge Grimm's order, and set full class certification briefing. ................................................. 9

STANDARD OF REVIEW.................................................... 10

ARGUMENT ....................................................................... 11

I.    The nature and status of the litigation militates against interlocutory review. ....................................................... 12

II.    The current certified classes do not dispose of the litigation. ....... 13

III.    No "manifestly erroneous" ruling exists that requires this Court to immediately review the presently certified classes ....... 15

    A.    Marriott waived its right to attempt to enforce the SPG Venue Clause................................................................ 15

        1.    Marriott sought collective litigation under CAFA and then proceeded under the law of many different states. ........................................... 18

        2.    Marriott "intentionally relinquished" whatever right it had to enforce the Venue Clause. ................... 19

        3.    The Venue Clause is unenforceable. ........................... 21

## TABLE OF CONTENTS
## (CONTINUED)

**Page**

B.  Judge Grimm did not err in admitting Dr. Prince's market value model. .............................................. 23

C.  Both Judges properly applied issue certification to Accenture. ................................................................ 24

    1.  A class may include members who ultimately lose. ...................................................................... 25

    2.  Rule 23(c)(4) certification is appropriate when it advances the resolution of the litigation as a whole. ................................................................... 26

        a.  The District Court applied the correct legal standard. ................................................... 26

        b.  An issue class trial against Accenture would advance the resolution of this litigation. ........... 29

CONCLUSION ........................................................................ 30

CERTIFICATE OF COMPLIANCE ...................................... 33

CERTIFICATE OF SERVICE ............................................... 34

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Berry v. Schulman,*
807 F.3d 600 (4th Cir. 2015)............................................................... 17

*Black v. Occidental Petroleum Corp.,*
69 F.4th 1161 (10th Cir. 2023) ............................................................ 30

*Cadigan v. Liberty Helicopters, Inc.,*
206 A.D.3d 523 (N.Y. App. 2022)....................................................... 23

*Castano v. Am. Tobacco Co.,*
84 F.3d 734 (5th Cir. 1996)................................................................. 27

*Cobb Cnty. Bd. of Educ.,*
248 F.3d 1061, 1064 (11th Cir. 2001).................................................. 12

*In re Comty. Health Sys., Inc.,*
2019 WL 5549319 (6th Cir. Oct. 23, 2019)......................................... 12

*In re Deepwater Horizon,*
739 F.3d 790 (5th Cir. 2014)............................................................... 28

*In re Delta Air Lines,*
310 F.3d 953 (6th Cir. 2002)............................................................... 12

*GMS Indus. Supply, Inc. v. G & S Supply, LLC,*
441 F. Supp. 3d 221 (E.D. Va. 2020) .................................................. 21

*Good v. Am. Water Works Co., Inc.,*
310 F.R.D. 274 (S.D. W.Va. 2015) ..................................................... 28

*In re IKO Roofing Shingle Prods. Liab. Litig.,*
757 F.3d 599 (7th Cir. 2014)............................................................... 24

*Int'l Bhd. of Teamsters v. United States,*
431 U.S. 324 (1977) ............................................................................ 25

**TABLE OF AUTHORITIES**
(continued)

Page

*Krape v. PDK Labs Inc.*,
194 F.R.D. 82 (S.D.N.Y. 1999) ............................................................ 20

*LeBlanc v. Halliburton Co.*,
414 F. Supp. 3d 1360 (D.N.M. 2019) .................................................. 20

*Lienhart v. Dryvit Systems, Inc.*,
255 F.3d 138 (4th Cir. 2001) ....................................................... *passim*

*In re Marriott Int'l, Inc.*,
78 F.4th 677 (4th Cir. 2023) .................................................. 1, 9, 15, 16

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*,
341 F.R.D. 128 (D. Md. 2022) ...................................................... *passim*

*Martin v. Behr Dayton Thermal Prods. LLC*,
896 F.3d 405 (6th Cir. 2018) ............................................................... 27

*McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
672 F.3d 482 (7th Cir. 2012) ........................................................ 27, 29

*Morgan v. Sundance, Inc.*,
596 U.S. 411 (2022) ........................................................................... 20

*Naparala v. Pella Corp.*,
2016 WL 3125473 (D.S.C. June 3, 2016) ........................................... 28

*In re Nassau Cnty. Strip Search Cases*,
461 F.3d 219 (2d Cir. 2006) ............................................................... 27

*Parker v. Asbestos Processing, LLC*,
2015 WL 127930 (D.S.C. Jan. 8, 2015) .............................................. 28

*Russell v. Educ. Comm'n for Foreign Med. Graduates*,
15 F.4th 259 (3d Cir. 2021) .......................................................... 27, 28

**TABLE OF AUTHORITIES**
(continued)

Page

*Power Authority of New York ex rel. Solar Liberty Energy*
    *Systems, Inc. v. Advanced Energy Indus., Inc.*,
    2021 WL 4244280 (W.D.N.Y. Aug. 23, 2021) ....................................... 20

*Tillman v. Highland Indus., Inc.*,
    2021 WL 4483035 (D.S.C. Sept. 30, 2021) ........................................... 28

*Tyson Foods, Inc. v. Bouaphakeo*,
    136 S. Ct. 1036 (2016) ..................................................................... 25

*In re: Uber Tech., Inc., Passenger Sexual Assault Litig.*,
    2023 WL 6456588 (J.P.M.L. Oct. 4, 2023) ........................................... 22

*Valentino v. Carter-Wallace, Inc.*,
    97 F.3d 1227 (9th Cir. 1996) ............................................................. 27

*Ward v. Dixie Nat. Life Ins. Co.*,
    257 Fed. App'x 620 (4th Cir. 2007)..................................................... 12

*In re White*,
    64 F.4th 302 (D.C. Cir. 2023) *cert. denied sub nom. Hilton*
    *Hotels Ret. Plan v. White*, No. 23-166 (U.S. Dec. 11, 2023)................ 11

## Statutes and Rules

28 U.S.C. § 1407................................................................................. 22

Fed. R. Civ. P. 1 ................................................................................. 22

Fed. R. Civ. P. 23 ...................................................................... *passim*

Fed. R. Evid. 702................................................................................ 24

## INTRODUCTION

Appellant-Defendants Marriott International, Inc. and Accenture LLP ask this Court to take the unprecedented step of granting interlocutory review in the *middle* of active and ongoing class certification briefing. Plaintiffs are not aware of any appellate court to grant review in such circumstances, and Defendants cite none. For good reason: it would be a manifest waste of judicial resources to grant interlocutory review when the parties are in the process of briefing outstanding class certification issues in the trial court. Defendants' petitions have no merit.

In May 2022, now-retired District Court Judge Paul Grimm granted Plaintiffs' motion for class certification, Defendants sought review under 23(f) at that time, and this Circuit granted that petition. Dkts. 1014, 1048. While Defendants argued that Judge Grimm made far-reaching errors, this Court ultimately vacated and remanded solely for the District Court to consider the impact of the "Choice of Law and Venue" clause ("Venue Clause") that appears in Marriott's contract with Plaintiffs. *In re Marriott Int'l, Inc.*, 78 F.4th 677, 680 (4th Cir. 2023).

In November 2023, Judge John P. Bailey (who replaced Judge Grimm) ruled that the Venue Clause did not bar class certification and so reinstated Judge Grimm's order. Dkt. 1155. A few weeks later, after a status hearing regarding the next steps in this action, Judge Bailey set a class certification schedule regarding a renewed motion to certify a larger class, which would subsume the ones at issue in Defendants' petitions and potentially address other issues, beginning with Plaintiffs' opening brief on January 26. Dkt. 1161.

Defendants' current petitions are thus non-sensical: the District Court will issue an order on Plaintiffs' renewed class certification motion imminently. There is no way to know what that order will say, and there can be no basis for review until the order says it. No matter what the opinion says, Defendants' current petitions are already stale. Plaintiffs respectfully ask the Court to deny them.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

In 2015, Marriott agreed to buy Starwood Hotels and Resorts Worldwide, Inc. ("Starwood"), for $12.2 billion. Dkt. 1022-1 at 16.[1] At the time, Starwood and its IT provider, Accenture, had allowed Starwood's systems to fall into complete disrepair, below security standards Marriott itself had implemented ten years prior. *Id.* As one of Starwood's IT executives put it, "the same old [security] themes" that Starwood had neglected for years meant that Starwood had "little ability to withstand" an attack from hackers. *Id.* Marriott's cybersecurity leaders viewed Starwood's systems as a pariah. The insecure and out-of-date system that held most of the personally identifying information ("PII") for Starwood's customers was called the "New" Data Storage or "NDS." *Id.*

Marriott's IT personnel asked for money to address the woefully outdated security in Starwood's systems. Dkt. 1022-1 at 16. The weaknesses with Starwood's systems were well-known: one executive put the concerns about the Starwood environment in particularly vivid terms: "think of it as having a couple of shots of tequila tonight—probably

---

[1]     References to page numbers are to the pages designed by the CM/ECF system in the District Court.

not a big deal after taking some aspirin in the morning, but if you're doing it every night for years, the cumulative effect is likely problematic." *Id.* at 16-17. A former senior vice president asked to increase the budget to deal with myriad problems with Starwood's data security by over five hundred percent—presenting what was called a "holy shit moment" to the executive leadership team. *Id.* at 17. But Marriott's senior leadership repeatedly rejected those requests, deciding to "not invest in fortifying security" in legacy systems that would be replaced, gambling that nothing would go wrong over the several years it would take Marriott to phase them out. *Id.*

Marriott lost that bet and hundreds of millions of its customers suffered as a result. According to Marriott's own timeline, attackers entered Starwood's systems in July 2014, had unfettered access until September 2018, and staged for exfiltration the PII from every class member in the process. Dkt. 1022-1 at 17. This litigation against Marriott and Accenture followed.

A. **Marriott sought to address all claims against it in a single court, renouncing the two-sentence Venue Clause at the outset of litigation.**

In the face of many dozens of lawsuits immediately following the announcement of the data breach, Marriott faced a choice. Its contract with Starwood members had a clause that Marriott argues would have prohibited any class litigation. But the clause also provided that Marriott could not consolidate claims, had to litigate in New York, and subjected Marriott to New York's consumer-friendly law. Dkt. 1022-34 at 21, §13.21. The two-sentence clause (absent from Marriott's brief) provides:

> 13.21 *Choice of Law and Venue.* Any disputes arising out of or related to the SPG Program or these SPG Program Terms will be handled individually without any class action, and will be governed by, construed and enforced in accordance with the laws of the State of New York, United States, without regard to its conflicts of law rules. The exclusive jurisdiction for any claim or action arising out of or relating to these SPG Program Terms or the SPG Program may be filed only in the state or federal courts located in the State of New York, United States.

Marriott ultimately elected not to risk New York's statutory damages and attorneys' fees applying to the entire class. It first asked the Judicial Panel on Multidistrict Litigation ("JPML") to create an MDL so that a single court could issue pretrial orders and evaluate all claims together (while the Venue Clause purportedly precludes any grouping of claims). *See* Dkt. 1153-2 at 5-8. And Marriott added that this aggregate

- 5 -

litigation should occur in its home district of Maryland (while the Venue Clause states that any litigation must occur in New York). *Id.* at 8-11.

Marriott got its wish and the cases were consolidated by the JPML to Maryland District Court. Thereafter, Marriott sought a bellwether process to test class claims under multiple state's laws. Dkts. 252 at 2; 368 at 2. This is particularly notable because, if the Venue Clause applied and was enforceable, it required litigation solely under New York law. By affirmatively seeking litigation under the law of many states, Marriott was again making clear that it was rejecting the Venue Clause to whatever limited extent it might have been enforceable.[2]

---

[2]    In its motion to dismiss the bellwether complaint, Marriott relegated to a footnote the boilerplate disclaimer "that neither party was waiving any arguments it may have regarding choice of law." Dkt. 450-1 at 2, n.1.

Marriott's first arguable reference to the Venue Clause came over a year into the litigation in the last of a series of boilerplate defenses in its Answer, stating, without attribution, that "Plaintiffs' claims are barred in this jurisdiction, in whole or in part, by their agreement to waive participation in a class action." Dkt. 620 at 98. Marriott did not cite to the Venue Clause in the SPG Terms or anywhere else.

**B.    Judge Grimm largely granted class certification in May 2022.**

The District Court (Grimm, J.) ultimately granted class certification in May 2022, certifying three damages classes under two theories of liability—breach of contract and various state consumer protection statutes. The District Court also certified two negligence classes under 23(c)(4). *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 341 F.R.D. 128, 169 (D. Md. 2022) ("*Marriott I*").

In connection with class certification, Plaintiffs asked Judge Grimm to consider two expert-supported damages models from Dr. Jeffrey Prince. The first was the "market price" model. It simply measured the logical view that if consumers had known that Marriott was not providing reasonable data security, Marriott's services would likely have cost less. Dkt. 1022-1 at 44.  With the benefit of the Court's own economist, Judge Grimm accepted this theory. *Marriott I*, 341 F.R.D. 153.

Dr. Prince's second damages theory was the "valuation" or "loss of market value" model. This model explains that personal information has real market value—people buy and sell it, consumers trade it to companies in exchange for goods and services, companies monetize it to each other—and Marriott and Accenture should pay the fair market

value of the information they allowed criminals to take. Dkt. 1022-1 at 45. Judge Grimm rejected that theory, but did so *without prejudice* because Marriott's eleventh-hour revelation after the close of discovery of its own valuation of this data led to an "underdeveloped...record on this issue." *Marriott I*, 341 F.R.D. at 154. The Court further explained that "one can understand how this valuation might be used to demonstrate damages on a classwide basis." *Id.* He stated that "a working damages model that fleshes out the loss of market value theory . . . could show the Court how it should understand fact of injury, injury causation, etc. under a loss of market value theory." *Id.*

The District Court permitted Plaintiffs to conduct discovery into Marriott's valuation of its customers' personal information. Dkt. 1160 at 13-17. That discovery is now complete and will inform Plaintiffs' forthcoming renewed class certification motion on January 26. *Id.* at 17.

**C. This Court granted leave to appeal under 23(f), ultimately reversing, instructing the District Court to consider the Venue Clause.**

Marriott filed a Rule 23(f) petition which this Court accepted. On August 18, 2023, this Court vacated the District Court's class certification order and remanded to the District Court for further

proceedings consistent with its decision related to the applicability of the Venue Clause. *In re Marriott Int'l, Inc.*, 78 F.4th 677 (4th Cir. 2023).

**D.    Judge Bailey rejected Marriott's arguments about the Venue Clause, reinstated Judge Grimm's order, and set full class certification briefing.**

On September 22, 2023, the District Court (Bailey, J.) issued an order directing Consumer Plaintiffs and Defendants to file briefing on the effect of the Venue Clause. Dkt. 1135. The parties filed their respective briefs and responses concerning the effect of the purported class waiver provision on class certification. Dkts. 1138, 1141, 1142, 1146-47.

On November 29, 2023, the District Court issued an order, finding that Marriott waived any ability to enforce its Venue Provision and concluding that the Venue Provision was unenforceable in any event. Dkt. 1155. With respect to Marriott's waiver, Judge Bailey explained that: "[i]t appears that Marriott having not fared as well as it had hoped in the bellwether process is now attempting to invoke one half of one third of the Choice of Law and Venue provision. . . . Marriott should not be permitted to cherry-pick the rules from a provision, having waived every other term therein." *Id*. at 12. After making several findings of fact, Judge Bailey thus reinstated Judge Grimm's class certification order. *Id*.

On December 12, 2023, Plaintiffs requested a status conference to discuss their "renewed motion for class certification as to damages (and liability) classes that would rely on the loss of market value theory the Court previously denied without prejudice" and "may potentially seek modification of the classes that the Court re-certified in its November 29, 2023 Order." Dkt. 1156.

On December 18, 2023, the District Court set a hearing for December 27, 2023. Dkt. 1159. At that hearing, Marriott asked Judge Bailey to stay further proceedings until this Court rules on Marriott's Rule 23(f) petition. The District Court rejected Marriott's request. Dkt. 1161. The following day, the District Court set a class certification schedule: Plaintiffs' class certification brief is due January 26, 2024, Defendants' opposition is due on February 23, 2024, and Plaintiffs' reply is due March 8, 2024. *Id.* Plaintiffs thus asked Defendants to withdraw their 23(f) Petitions. They declined.

## STANDARD OF REVIEW

This Court evaluates the appropriateness of Rule 23(f) petitions under a five-factor test (the "*Lienhart*" factors), which asks:

(1) whether the certification ruling is likely dispositive of the litigation;

(2) whether the district court's certification decision contains a substantial weakness;

(3) whether the appeal will permit the resolution of an unsettled legal question of general importance;

(4) the nature and status of the litigation before the district court (such as the presence of outstanding dispositive motions and the status of discovery); and

(5) the likelihood that future events will make appellate review more or less appropriate.

*Lienhart v. Dryvit Systems, Inc.*, 255 F.3d 138, 144 (4th Cir. 2001).

## ARGUMENT

This case is the paradigmatic example of why courts are hesitant to grant interlocutory review. It is not just that such review is "generally disfavored as 'disruptive, time[-]consuming, and expensive' for both the parties and the courts." *In re White*, 64 F.4th 302, 307 (D.C. Cir. 2023) *cert. denied sub nom. Hilton Hotels Ret. Plan v. White*, No. 23-166, 2023 WL 8531895 (U.S. Dec. 11, 2023) (cleaned up). It is also that aggressive interlocutory review would "inhibit[] the district court's willingness to revise the class certification for fear of triggering another round of appellate review." *Id.* Here, the District Court has *already* ordered full class certification briefing. Dkt. 1161. Defendants' petitions inappropriately seek to short-circuit that process and are not supported by any of the *Lienhart* factors.

## I.  THE NATURE AND STATUS OF THE LITIGATION MILITATES AGAINST INTERLOCUTORY REVIEW.

The fourth and fifth *Lienhart* factors weigh heavily against review of the current class certification order, given the ongoing nature of the proceedings below. As many circuits have noted, "[i]f the district court might reexamine its certification decision, interlocutory review of the decision is discouraged." *In re Comty. Health Sys., Inc.*, 2019 WL 5549319, at *2 (6th Cir. Oct. 23, 2019); *see also In re Delta Air Lines*, 310 F.3d 953, 961 (6th Cir. 2002) (rejecting interlocutory appeal, noting that it would entangle the appellate court in the merits of a case still developing and that "the certification of subclasses may be revisited at some point in the future.").[3] Here, of course, it is not just that a district court *might* revisit class certification—the District Court has already said that it *will* and already set a briefing schedule.

---

[3]    *See also, e.g.*, *Ward v. Dixie Nat. Life Ins. Co.*, 257 Fed. App'x 620, 630 (4th Cir. 2007); *accord Cobb Cnty. Bd. of Educ.*, 248 F.3d 1061, 1064 (11th Cir. 2001) ("'[W]e should err, if at all, on the side of allowing the district court an opportunity to fine-tune its class certification order rather than opening the door too widely to interlocutory appellate review.'") (*quoting Prado-Steiman v. Bush*, 221 F.3d 1266, 1274 (11th Cir. 2000)).

And that forthcoming order from the District Court is likely to go to the heart of Defendants' petitions. For example, Accenture notes that the damages model for the Consumer Plaintiffs' negligence claims relied on the valuation theory that Judge Grimm denied without prejudice. Accenture Pet. at 1. But if the District Court concludes that Plaintiffs' forthcoming valuation theory damages model—now buttressed by Marriott's own analysis—satisfies Rule 23(b)(3), every legal issue in Accenture's petition will be mooted. If the District Court certifies classes with different definitions than those presently before this court, then Marriott's "ascertainability" arguments may vanish. And the desire of amicus to use the currently certified Rule 23(c)(4) class as a vehicle to test whether this Court will accept the minority view on the application of 23(c)(4), Amicus Br. at 10, cannot justify this premature interlocutory review, especially when it is possible there will be different—or no—(c)(4) certification at all in just a few months.

## II. THE CURRENT CERTIFIED CLASSES DO NOT DISPOSE OF THE LITIGATION.

The first *Lienhart* factor asks whether certification is "likely dispositive" i.e., signals a "death knell" for the litigation because it ends the case for Plaintiffs, or can put considerable "pressure on the defendant

- 13 -

to settle." *Lienhart*, 255 F. 3d at 143. As the Advisory Committee Notes to Fed. R. Civ. Pro. 23(f) explain, "An order granting certification. . . may force a defendant to settle . . . ." Notably, neither Defendant makes an argument under this factor, nor could they.

Defendants are large international corporations that have the wherewithal to survive a class trial on this data breach. Neither could claim the reinstated certification order imposes "irresistible pressure" on them to settle. *See Lienhart*, 255 F.3d at 143. This is particularly so because the next step in the District Court is not trial or even summary judgment: it is to again brief class certification.

To that end, Defendants' argument that they will not have another opportunity to ask this Court to resolve any issues before a class trial, while definitionally true of *most* petitions for interlocutory review, is incorrect here. Marriott Pet. at 10; Accenture Pet at 21. Defendants can make the exact arguments that they make in their current petitions again to the extent such arguments apply to the District Court's forthcoming class certification order. And if they don't apply, this again shows why review now is inappropriate.

III. **NO "MANIFESTLY ERRONEOUS" RULING EXISTS THAT REQUIRES THIS COURT TO IMMEDIATELY REVIEW THE PRESENTLY CERTIFIED CLASSES**

The second *Lienhart* factor, the degree to which the district court's error is "manifestly erroneous and virtually certain to be reversed on appeal," also fails to support the granting of a 23(f) petition. *Lienhart,* 255 F.3d at 145. The District Court's certification order is viewed "in terms of the likelihood of reversal under an abuse of discretion standard." *Id.* In *Lienhart*, the district court failed to properly apply North Carolina law on contributory negligence. 255 F.3d at 149-50. Neither Defendant can show any such error here.

A. **Marriott waived its right to attempt to enforce the SPG Venue Clause.**

Consistent with this Court's directive, the District Court set out to determine whether Marriott's Venue Claus applies to this litigation. *In re Marriott*, 78 F.4th 677.[4] It made a number of findings:

---

[4]    While Judge Grimm did not definitively rule on the issue in his May 2022 class certification order, he too questioned whether Marriott had waived invocation of the clause. *Marriott,* 341 F.R.D. at 149 n.26 (noting over thirty-one months of contentious litigation, Marriott "did not raise [the Venue Clause] as part of the bellwether negotiation process, address it in dozens of meet-and-confer and scheduling conferences, or raise it as part of any[] motion practice [prior to defendants' opposition to class certification].") (internal quotation marks omitted).

- 15 -

- The Venue Clause contains two sentences;

- "While it has been described as a class action waiver, the provision is broader than that, mandating the handling of all claims on an individual basis";

- The Venue Clause requires that New York law apply to any dispute;

- The Venue Clause limits jurisdiction to handle any claims in the state and federal courts of New York; and

- "Rather than referencing the parties, the [Venue Clause] purports to control the court's management of the litigation, i.e. will be handled individually."

Dkt. 1155 at 11.

With regard to Marriott's conduct, the District Court found that while Marriott had "reserved" its rights regarding choice of law, "a reservation of rights is not an assertion of rights." *Id.* It noted that while Marriott's citation to the Venue Clause in its answer would *typically* be sufficient to assert its rights,[5] Marriott could not do so because it was only "attempting to invoke one half of one third of the Choice of Law and Venue Provision" and was seeking to "enforce the words 'class action'

---

[5]    This Court previously stated that "at least as a general rule, it is not obvious that more would be required." *In re Marriott*, 78 F.4th at 687.  The District Court did not disagree with such a general rule, but noted that Marriott's invocation of only a portion of the Venue Clause made the general rule inapplicable to this unique case.

completely out of context." *Id.* at 11-12. Further, because the Venue Clause provides that cases "will be handled individually without class action"—which is a single phrase—Marriott could not ask the District Court to selectively enforce the clause "without class action" after Marriott, itself, ignored the "will be handled individually" clause for years. *Id.*

The District Court's findings were not manifestly erroneous.[6] Marriott's conduct throughout the case contradicted all aspects of its unique Venue Clause it later sought to enforce. That clause stated SPG members must resolve disputes: (1) individually, (2) in New York, and (3) under New York law. Yet throughout the litigation, Marriott litigated by a different set of rules and made repeated arguments contradicting all of these provisions.

---

[6]    *Berry v. Schulman*, 807 F.3d 600, 608 (4th Cir. 2015) (affirming certification of settlement class, noting that findings of fact are reviewed for "clear error," and that committing such error would be an abuse of discretion pursuant to Rule 23).

### 1. Marriott sought collective litigation under CAFA and then proceeded under the law of many different states.

Marriott first acted contrary to the Venue Clause when it advocated removing cases under the Class Action Fairness Act's jurisdictional provisions and for consolidation rather than individual litigation.[7] In particular, Marriott sought consolidated litigation in Maryland, despite the Venue Clause restricting venue to New York. Dkt. 1153-2 at 2. And when it moved to dismiss in the consolidated litigation, Marriott did not seek dismissal or transfer based on the Venue Clause, but only argued that Plaintiffs failed to state a viable claim. Dkt. 450. Indeed, Marriott ultimately asserted in its answer that "venue is proper" in Maryland, and the court had jurisdiction pursuant to CAFA. Dkt. 604 ¶¶ 7, 11.[8]

---

[7]    *See, e.g.,* Dkt. 316 at 2 (noting that Marriott removed an individual action to federal court "and immediately sought inclusion of this action in the related Multidistrict Litigation"); Dkt. 15 at 8 (opposing remand of Ohio state claims noting "Starwood has a legitimate interest in consolidating this action with the many others that have been filed because of the data security incident."); *Frank v. Marriott Int'l, Inc.,* 3:19-cv-326, Dkt. 1 (D. Conn.) (removing a case from Connecticut state court to Connecticut federal court despite the plaintiff arguing in her complaint that she was a Starwood loyalty member).

[8]    Marriott also argues that the District Court "misunderstood the nature of MDLs in general" because, after cases are transferred to an MDL court for pretrial treatment, they are "remanded back to their

Immediately following centralization in the District of Maryland, Marriott requested that the parties engage in a "collaborative bellwether process" and "focus on injury" to "advance an efficient resolution of this MDL." Dkt. 252 at 2. It never mentioned how resolving its purported class waiver at the outset of the MDL would have advanced the efficient resolution. Marriott proposed including Illinois, Maryland, Michigan, and Oregon laws as part of the bellwether process, too. Dkt. 368 at 2.

### 2. Marriott "intentionally relinquished" whatever right it had to enforce the Venue Clause.

Marriott's conduct (and sworn statements in court that, e.g., venue is proper in Maryland) are inimical to the Venue Clause. Even if Marriott had a right to enforce the Venue Clause at the outset of this litigation, it chose not to, in favor of attempting to obtain favorable court rulings that would impact multiple plaintiffs across multiple cases; the opposite of "handling" the cases "individually." This demonstrates that Marriott

---

courts of origin for trial." Marriott Pet. at 13. But Marriott's filings sought dispositive rulings on representative bellwether claims based upon injuries that were also representative of a number of plaintiffs. Dkt. 252 at 2. Such a process would result in foregoing trials for numerous plaintiffs and class members—"individually" or otherwise. Judge Bailey correctly understood that Marriott's goal was "the antithesis of handling each claim on an individual basis." Dkt. 1155 at 10.

voluntarily waived whatever ability it might have had to enforce the Venue Clause because it "intentionally relinquished" any contract rights under the Venue Clause. *See Morgan v. Sundance, Inc.*, 596 U.S. 411, 417 (2022) (cleaned up).[9]

Defendants' cases are not to the contrary. *See, e.g.*, Marriott Pet. at 12. All involved arbitration provisions and each of those defendants moved to compel arbitration at the earliest possible time.[10] Waiver was

---

[9]    *See also, e.g.*, *LeBlanc v. Halliburton Co.*, 414 F. Supp. 3d 1360, 1366 (D.N.M. 2019) (finding waiver of an arbitration clause, among other reasons, when defendant sought to enforce the arbitration clause in a different forum); *Power Authority of New York ex rel. Solar Liberty Energy Systems, Inc. v. Advanced Energy Indus., Inc.,* No. 19-cv-1542, 2021 WL 4244280, at *2 (W.D.N.Y. Aug. 23, 2021) (finding that party had waived a forum selection clause); *Krape v. PDK Labs Inc.,* 194 F.R.D. 82, 86 (S.D.N.Y. 1999) (finding waiver where defendant, among other things, failed to object to transfer orders)

[10]    *See* Defendant-Appellant DirecTV's Opening Brief at 5-8, *Kahaly v. DirecTV, Inc.,* Case No. 11-56752, Dkt. 7 (9th Cir. Apr. 11, 2012) (noting that DirecTV filed a motion to compel arbitration promptly after a change in law allowed them to do so); Regions' Motion to Compel Arbitration and Dismiss the Complaint at 1, *Hough v. Regions Fin. Corp.*, Case No. 1:09-CV-2545-BBM, Dkt. 6 (N.D. Ga. Oct. 15, 2009) (moving to compel arbitration one month after complaint was filed); The H&R Block Defendants' Motion to Stay the Case and Compel Arbitration at 1, *In re H & R Block Refund Anticipation Litig.*, MDL No. 2373, Dkt. 22 (N.D. Ill. July 20, 2012) (moving to compel arbitration two months after all cases were transferred to the MDL); T-Mobile Motion to Dismiss, at 1 (moving to compel arbitration one month after case was removed from state

- 20 -

not at issue. To that end, it is of no moment that Marriott's 32nd defense was a reference to a potential, undefined "agreement to waive participation in a class action." Dkt. 620 at 98. As the District Court correctly noted, the bulk of the Venue Clause has nothing to do with a purported agreement not to participate in a class action—it is about venue and choice of law—so a vague reference to waiver was insufficient on this factual record given Marriott's unambiguous conduct to the contrary rejecting the Venue Clause. It is for that same reason that Marriott's arguments about "severability" and "no-waiver," Marriott Pet. at 15-16, are of no moment—independent clauses with distinct duties are severable, *GMS Indus. Supply, Inc. v. G & S Supply, LLC*, 441 F. Supp. 3d 221, 228 (E.D. Va. 2020), one half of one third of a unified legal duty is not.)

### 3.    The Venue Clause is unenforceable.

Even if Marriott had properly asserted the Venue Clause, it would be irrelevant. While litigants may waive their ability to proceed as a class

---

court); T-Mobile USA, Inc.'s Notice of Motion and Motion to Compel Arbitration of Plaintiffs Chunn's, Giles's, Harmon's, and Hall's Claims at 2*, In re Jamster Mktg. Litig.*, MDL No. 1751, Dkt. 244 (S.D. Cal. Aug. 8, 2008) (moving to compel arbitration one month after consolidated complaint in MDL filed).

action under certain circumstances, Marriott's Venue Clause purports to bind what *courts* may or may not do. The Venue Clause states that "[a]ny disputes arising out of or related to the SPG Program or these SPG Program Terms *will be handled* individually without any class action. . . ." Dkt. 1022-34 at 21, § 13.21 (emphasis added). This is not just an agreement between private parties; it dictates how a federal court can manage an already-filed case. It would be akin to a clause directing "neither party may invoke Fed. R. Civ. P. 1 and may take as much time as they want to litigate a case." That is why the District Court found the clause wholly unenforceable. Dkt. 1155 at 13.

Parties cannot unilaterally contract around federal procedural rules that increase the efficiency of the court system unless such rules specifically allow for that; instead, courts must enforce those rules as written. *See, e.g., In re: Uber Tech., Inc., Passenger Sexual Assault Litig.*, 2023 WL 6456588, at *2 (J.P.M.L. Oct. 4, 2023) (rejecting argument that Uber's "Terms of Use preclude the motion for centralization" and explaining that "The Panel is not bound by Uber's Terms of Use" but instead the standards prescribed in 28 U.S.C. § 1407).

The District Court committed no error (and surely not manifest error) in concluding that Marriott "waived its forum selection clause defense by participating in this litigation and engaging in extensive discovery for three years." *Cadigan v. Liberty Helicopters, Inc.,* 206 A.D.3d 523, 523 (N.Y. App. 2022). Immediate review on his class waiver ruling is not warranted, nor would it provide guidance to other courts as to how to interpret or enforce *agreements* between *parties* concerning participation in class litigation.[11]

## B.    Judge Grimm did not err in admitting Dr. Prince's market value model.

Marriott also demands this Court invade the province of Judge Grimm's *Daubert* order on Dr. Prince's market value damages model, and the jury's province of deciding among experts. Marriott Pet. at 24-25. But Rule 23(f) is not a vehicle to review *Daubert* decisions, and Judge Grimm did not abuse his discretion in any event: the District Court hired its own expert economist from Duke University School of Law, held a six-hour March 2022 expert tutorial with Dr. Prince and Defendants' expert, Dkt. 953, and issued a carefully reasoned 38-page *Daubert* order in

---

[11]    Respondents are aware of no other case examining a clause stating that cases "will be handled" in such a way by a federal court.

conjunction with its May 2022 class certification order (which is not subject to immediate review). Dkts. 1012-13, 1014-15. While Marriott may disagree with Judge Grimm's *Daubert* order, there is no basis for immediate review. *See, e.g., In re IKO Roofing Shingle Prods. Liab. Litig.*, 757 F.3d 599, 603 (7th Cir. 2014) (Easterbrook, J.) (refusing to consider whether experts' reports satisfy Federal Rule of Evidence 702 on Rule 23(f) appeal).

## C.    Both Judges properly applied issue certification to Accenture.

Both District Court judges reached the same sound conclusion: if a Rule 23(b)(3) class trial proceeded against Marriott over the data breach, a jury would also be judging whether Accenture, the entity in charge of cybersecurity on Starwood's network, failed in its job. The same documents and experts would be used, making seriatim trials wasteful. *In re Marriott Int'l*, 341 F.R.D. at 169-70. That decision complies with Rule 23(c)(4), which permits courts to certify issue classes when doing so would promote efficiency. Nevertheless, Accenture again argues that the District Court committed error justifying immediate review based on

novel, obscure, and incorrect interpretations of Rule 23(c)(4) that it would prefer this Court adopt.[12] None of these arguments have merit.

### 1. A class may include members who ultimately lose.

Accenture's first argument is that a common injury is needed for Article III purposes (and none exists). Accenture Pet. at 8, 17. This is wrong factually and legally. As a factual matter, this ignores that all Class members have a common cognizable injury—cyberthieves stole their data from Starwood. Dkt. 671 at 8-9 (citing *Hutton v. Nat'l Bd. of Examiners in Optometry, Inc.*, 892 F.3d 613 (4th Cir. 2018)). As a legal matter, the Supreme Court specifically recognized that some class members may win while others may not have injury at all. *See*, *e.g.*, *Tyson Foods, Inc. v. Bouaphakeo,* 136 S. Ct. 1036, 1045 (2016) (rejecting defendants' argument that no class can be certified when some class members may not have been injured); *accord Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 360–61 (1977) (class may be certified even if class members will later have to establish injury in separate proceedings).

---

[12]    Of course, it is entirely plausible that the District Court's next opinion does not include a class certified pursuant to Rule 23(c)(4), mooting this argument.

## 2. Rule 23(c)(4) certification is appropriate when it advances the resolution of the litigation as a whole.

Accenture and its Amicus argue that the District Court committed manifest error by not requiring that all of Plaintiffs' negligence claims meet Rule 23(b)(3)'s predominance requirement. Accenture Pet. 12-13; Amicus Br. at 10 (*citing Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 444-45 (4th Cir. 2003)). But courts permit certification of issues and not entire claims, so long as the class decision would materially advance the litigation. *Manual for Complex Litigation* § 21.24 (4th ed. 2004).

### a. The District Court applied the correct legal standard.

Accenture argues all of Rule 23(b)(3)'s elements must be met for every claim before a court can certify an issues class under Rule 23(c)(4). Accenture Pet. at 11; *see also* Amicus Br. at 10-11. This interpretation would make issue certification superfluous. Courts can always bifurcate issues for trial management; and the advisory committee note specifically observed certifying issues when a class was not otherwise maintainable. Accordingly, most courts have rejected Accenture's cramped interpretation of 23(c)(4). *See, e.g.*, *Martin v. Behr Dayton Thermal Prods. LLC*, 896 F.3d 405, 413 (6th Cir. 2018) ("A requirement that

predominance must first be satisfied for the entire cause of action would undercut the purpose of Rule 23(c)(4) and nullify its intended benefits.").[13] Following the (overwhelming) majority of courts is not manifest error.

This is especially true because the primary case that supports Accenture's position is *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 745 n.21 (5th Cir. 1996). Amicus Br. at 10. The *Castano* approach, however, "has not been adopted by any other circuit, and subsequent caselaw from the Fifth Circuit suggests that any potency the narrow view once held has dwindled." *Russell*, 15 F.4th at 274 (citing *Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598, 603 (5th Cir. 2006)); *see also In re Deepwater*

---

[13]    *See also, e.g.*, *Russell v. Educ. Comm'n for Foreign Med. Graduates*, 15 F.4th 259, 274 n.7 (3d Cir. 2021) (quoting Rule 23 Subcommittee Report, and noting "all the circuits are coming into relative agreement that in appropriate cases Rule 23(c)(4) can be used even though full Rule 23(b)(3) certification is not possible due to the predominance requirement."); *McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 672 F.3d 482, 491 (7th Cir. 2012) (endorsing Rule 23(c)(4) issue class to determine the disparate impact of a challenged corporate policy, with "separate trials ... to determine which class members were actually adversely affected ... and if so what loss each class member sustained"); *In re Nassau Cnty. Strip Search Cases*, 461 F.3d 219, 230 (2d Cir. 2006) (holding that "district courts may employ Rule 23(c)(4)(A) to certify a class on a designated issue regardless of whether the claim as a whole satisfies the predominance test."); *Valentino v. Carter-Wallace, Inc.,* 97 F.3d 1227, 1234 (9th Cir. 1996) (similar).

*Horizon*, 739 F.3d 790, 806 (5th Cir. 2014) (recognizing the utility of 23(c)(4) to try common issues of a defendant's liability for negligence).

Neither Accenture nor the Chamber of Commerce point to conflicting rulings within this Circuit on applying 23(c)(4), necessitating this Court's review. Rather, courts in this Circuit agree that they will not use issue certification unless it promotes efficiency, or materially advances the litigation. *See, e.g.*, *Tillman v. Highland Indus., Inc.*, 2021 WL 4483035, at \*19-20 (D.S.C. Sept. 30, 2021) (rejecting issue certification where court found adequate incentive for stand-alone actions).[14] Further, this Rule 23(c)(4) class is unique in that the issue of Accenture's misconduct is subsumed in the Rule 23(b)(3) damages classes on Marriott's liability making this a poor vehicle for this Court to consider whether issue certification can be applied if all the elements of 23(b)(3) are not met.

---

[14]     *See also Naparala v. Pella Corp.*, 2016 WL 3125473, at \*17 (D.S.C. June 3, 2016) (accepting the "more permissive approach" of 23(c)(4) accepted by the majority circuits, but still rejecting issue certification as not superior or efficient); *Good v. Am. Water Works Co., Inc.*, 310 F.R.D. 274 (S.D. W.Va. 2015) (permitting issue certification where individual seriatim suits inefficient, costly, and unlikely to happen); *Parker v. Asbestos Processing, LLC*, 2015 WL 127930, at \*12 (D.S.C. Jan. 8, 2015) (concluding certifying the issues would not bring the case any closer to resolution).

**b.    An issue class trial against Accenture would advance the resolution of this litigation.**

Accenture concludes by arguing that issue certification is not superior to no class at all for consumers. Accenture Pet. at 13-16. But trying an important and costly issue like liability in every individual case is inferior to doing so as part of a class trial and further justifies issue certification. If a defendant prevails during the class litigation on a core element (such as duty or breach), that outcome will have preclusive effect on the entire class and terminate the litigation. This will of course be less costly and time consuming than individual trials on four negligence elements: duty, breach, causation, and damages. Especially when the same evidence regarding the first two elements would need to be repeated seriatim in each individual trial. *See, e.g.*, *McReynolds,* 672 F.3d at 491 ("[H]undreds of separate trials may be necessary to determine which class members were actually adversely affected … and if so what loss each class member sustained … But at least it wouldn't be necessary in each of those trials to determine whether the challenged practices were unlawful.").

Recently, the Tenth Circuit rejected an argument similar to Accenture's, that resolving the defendant's liability would not be as

efficient as many individual trials featuring the same evidence. The court affirmed the class order noting, "it was not a clear error in judgment for the district court to conclude that it would advance judicial economy, and resolution of the dispute, to permit class-wide resolution of liability before determining individual class members' damages." *Black v. Occidental Petroleum Corp.*, 69 F.4th 1161, 1190 (10th Cir. 2023). Here, an even greater efficiency and superiority argument supports issue certification because a class trial regarding Marriott's liability has also been certified. Indeed, Judge Grimm certified an issue class against Accenture in part because these liability issues were already going to be presented to the class jury. *Marriott I,* 341 F.R.D. at 169; Dkt. 1155 at 20. Accenture's attack on the District Court's superiority analysis thus does not come close to identifying an abuse of discretion.

## CONCLUSION

For the reasons above, this Court should deny Marriott and Accenture's respective Rule 23(f) Petitions.

Dated:  January 8, 2024          Submitted by: _/s/ Amy Keller_____

                                 **_Counsel for Respondents_**


                                 Amy Keller
                                 **DICELLO LEVITT LLP**
                                 Ten North Dearborn Street
                                   Sixth Floor
                                 Chicago, Illinois 60602
                                 312.214.7900
                                 akeller@dicellolevitt.com

                                 Andrew N. Friedman
                                 **COHEN MILSTEIN SELLERS**
                                 **& TOLL PLLC**
                                 1100 New York Avenue, NW
                                   Suite 500
                                 Washington, D.C. 20005
                                 202.408.4600
                                 afriedman@cohenmilstein.com

                                 James J. Pizzirusso
                                 **HAUSFELD LLP**
                                 888 16th Street, NW
                                   Suite 300
                                 Washington, D.C. 20006
                                 202.540.7200
                                 jpizzirusso@hausfeld.com

                                 _Plaintiffs' Co-Lead Counsel_

Douglas J. McNamara
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Avenue, NW,
   Suite 500
Washington, D.C. 20005
202.408.4600
dmcnamara@cohenmilstein.com

Jason L. Lichtman
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, NY 10013
212.355.9500
jlichtman@lchb.com

*On brief*

## CERTIFICATE OF COMPLIANCE

I, Amy Keller, certify as follows:

Pursuant to Fed. R. App. P. 32(g)(1), Respondents, by and through their counsel of record, hereby certify that this Answer complies with the type-volume limitations of Fed. Rule App. P. 5(c) and 32(c)(2) because this brief contains 6,233 words, excluding the parts of the petition exempted by Fed. R. App. P. 32(f). I further certify that this Answer complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this Answer has been prepared in a proportionally spaced typeface using Century Schoolbook font, a proportionally-spaced, 14-point serif font.


Dated:  January 8, 2024          */s/ Amy Keller*
                                 Amy Keller

## CERTIFICATE OF SERVICE

I hereby certify that on January 8, 2024, I electronically filed the foregoing Answer with the Clerk of Court for the U.S. Court of Appeals for the Fourth Circuit by using the CM/ECF system. All participants are registered CM/ECF users and will be served by the appellate CM/ECF system.

I also certify that on January 8, 2024, I caused a copy of the foregoing Answer to be delivered by e-mail upon the following:

***Counsel for Defendant-Petitioner Accenture, LLP:***

Craig S. Primis, P.C.
Erin N. Murphy
Devin S. Anderson
Emily M. Long
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, NW
Washington, DC 20004
cprimis@kirkland.com

***Counsel for Defendant-Petitioner Marriott International, Inc.*:**

Daniel R. Warren
Lisa M. Ghannoum
Dante A. Marinucci
Kyle T. Cutts
BAKER & HOSTETLER LLP
127 Public Square
Suite 200
Cleveland, OH 44114
dwarren@bakerlaw.com

Gilbert S. Keteltas
BAKER & HOSTETLER LLP
1050 Connecticut Ave. NW
Suite 200
Washington, DC 20036
gketeltas@bakerlaw.com

Matthew S. Hellman
Lindsey C. Harrison
Zachary C. Schauf
Kevin J. Kennedy
JENNER & BLOCK LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001
mhellman@jenner.com

***Counsel for Amici Curiae*:**

Ashley C. Parrish
KING & SPALDING LLP
1700 Pennsylvania Avenue NW
Washington, DC 20006
aparrish@kslaw.com

Dated:  January 8, 2024          */s/ Amy Keller*
                                Amy Keller